G-eoege W. Peatt, S.
The will of Eleanor W. Ogden was probated in this court January 5, 1955 on petition dated October 11,1955, of Steuben Trust Company, a banking corporation which was named executor in the will, which petition was verified by the trust officer of said bank and alleged that the decedent died in the Folts Nursing Home, Herkimer, New York, July 16, 1954, that decedent at the time of her death was a resident of the City of Hornell, and naming among others, the Folts Home as residuary legatee. Jurisdiction on certain distributees was obtained by publication. On October 18, there was duly filed a notice of probate of the will addressed among others, to the Folts Home, Herkimer, New York, a legatee, with affidavit of mailing of said notice to the Folts Home on October 11, 1954. The will was dated October 2, 1952 and gave 84 Platt Street, Hornell, New York as residence of the decedent. ■
Nine days before decedent’s death she had left Hornell and entered the Folts Home at Herkimer, New York, on an application dated July 7, 1953 which was received by the home on July 9, 1953. On July 3, 1954, 13 days before her death, the Steuben Trust Company, at decedent’s request, mailed $7,000 par value securities and a certified check for $2,500 to the Folts Home.
■ On May 16, 1949, decedent had paid to Crandall and Crandall, Funeral Directors, the sum of $850 for her funeral when she should die, pursuant to written agreement of that date. Apparently the only assets remaining in the estate except for the disputed ^securities and $2,500 check are a small bank account of about $122.38. Under date of August 6, 1954,' Shults and Shults, as attorneys for the executor named in the will, *1012 requested that the Folts Home deliver back to the Steuben Trust Company, of Hornell, New York, as executor, the said securities and cash which had been delivered to the Folts Home under date of July 3, 1954. This was not done and under petition verified January 29, 1955, the executor commenced a discovery proceeding against Albert G. Judd, an individual, who had been the executive officer of the Folts Home, to inquire as to the said check and securities and an order dated January 31, 1955 was duly issued requiring him to attend the inquiry and be examined and show cause why he should not deliver said property tó the petitioner.
On March 4, 1955 a hearing was held in Hornell pursuant to this inquiry and Albert G. Judd was duly examined after which examination 10 days were given to the respondent to file an answer of title. Answer of title in the Folts Home was filed March 7, 1955. That proceeding against Judd was then apparently abandoned, as a new inquiry on petition verified August 26, 1955 was sought against the Folts Home and by order dated October 31 the Folts Home was required to attend and show cause why it should not deliver the said securities and money to the executor which order was returnable December 5, 1955 at Bath.
On December 5, 1955, a petition verified December 1, 1955 and supported by affidavits was filed by the Folts Home asking to have the probate opened and vacated on the ground of no domicile or residence in Steuben County. Counsel was notified that an order that a citation issue was necessary and he presented such an order on December 27, 1955 which was signed on that date and citation was issued for January 25, 1956 at Hornell and matter was adjourned day to day. There were no further proceedings until August 28, 1956, when a supplemental citation was issued to vacate probate. This was returned without service on September 14, 1956.
On December 17, 1956 on application a citation was issued and order made for publication of said citation returnable January 23, 1957, at Hornell. On December 26, 1956 Shults and Shults appeared for the executor. There were no other appearances and the matter was adjourned to January 23,1957. On the return day of January 23, 1957 Shults and Shults again appeared for the executor through John Horey, who stated that petitioner’s attorney Harry Morton, a State Senator, was in Albany for a Senate meeting and asked that the matter be adjourned one month to February 27, 1957 with all rights reserved. It was so adjourned.
*1013 On that date there were no appearances. The matter apparently died until May 6, 1957, when a third supplemental citation was issued in the same proceeding returnable May 22, 1957, at Hornell. Mr. Horey of Shults and Shults appeared as before. The court phoned to Mr. Morton who requested adjournment of one month to June 26. Under date of May 22 Mr. Morton by mail returned the second supplemental citation and requested further supplemental citation returnable June 26 which he filed by mail June 24 with proof of service on William B. Baun. On June 26 Mr. Horey appeared again.' No appearance by Mr. Morton. It was adjourned to July 24. On July 24 Mr. Horey of Shults and Shults appeared again for the executor and Mr. Morton on being phoned by the Surrogate requested further adjournment. It was then adjourned to October 23 for trial. On October 23, both attorneys appeared and agreed to adjourn day to day and if not brought on before November 27, 1957 at Hornell to be placed on the calendar for trial on that date. On November 27, 1957 it was adjourned by Mr. Horey to Bath for trial, Mr. Morton not appearing. On December 16, 1957, the matter was finally heard and January 17, 1958 petitioner’s attorney filed his brief in support of the application and on February 21 Shults and Shults, attorneys for executor, filed their answering brief. No motion was made in behalf of the executor for dismissal on technical grounds or grounds of laches, but Mr. Horey merely moved to dismiss on the grounds that nothing was shown to substantiate any finding of a change of domicile.
In determining this matter several fundamental principles must be remembered.
First. An application to vacate the probate is addressed to the discretion of the court. (Matter of Eisenlohr, 153 Misc. 130; Matter of Ohanian, 69 N. Y. S. 2d 638.)
Second. The decree should be vacated only in extraordinary cases. (Matter of Gori, 129 Misc. 541.)
Third. Only a person who would be a proper or necessary party to the probate may make the application. (Matter of Heidinger, 241 App. Div. 733.) But in this connection Surrogate Bichardson, citing numerous cases to support his contention in Matter of Ballmann (198 Misc. 916, 918) held “It is well established that in order to contest the probate of a testamentary instrument, contestant must have a financial interest in the estate which would be adversely affected by the probate of such instrument.’1’
*1014 Surrogate Wingate held in Matter of Hill (157 Misc. 487) that under subdivision 6 of section 20 of the Surrogate’s Court Act a person whose only interest in the estate is that of a legatee under the will could not make application to vacate the decree admitting the will to probate.
Fourth. It has also been held that the Surrogate may refuse to exercise the power to vacate a decree if laches exist to such an extent it would be inequitable and unjust. (Matter of Schell, 272 App. Div. 210, appeal dismissed 297 N. Y. 599.) Surrogate Frankenthaler in Matter of Hug (107 N. Y. S. 2d 664, 669) citing numerous cases, points out that ‘ ‘ the courts have invariably pointed out that laches will estop a person from attacking the probate decree ’ ’. It is well established that applications to vacate decrees should be made with promptness. (Matter of Kalmowitz, 134 Misc. 508.)
The petition herein alleged that the petition for probate “ erroneously, falsely, and fraudulently alleges that the said Eleanor W. Ogden was at the time of her death a resident of the City of Hornell and County of Steuben.” From all testimony presented the court here finds that there was no fraud on the part of the petitioner for probate, Steuben Trust Company, or anyone connected therewith, but that such allegation of residence was an innocent, honest and bona fide statement made without fraudulent intent.
From the complete record the court holds that this is not an extraordinary case; that the present application to vacate was not made with promptness, but that it was made as an afterthought to forestall any further examination of discovery; to vacate the decree would be inequitable and unjust at this stage; it would accomplish no useful purpose to vacate this probate and have the same transferred to Herkimer County where all the proceedings of probate, including publication would have to be repeated at considerable expense; and that petitioner, as residuary legatee did not have a financial interest in the estate which would be adversely affected by the probate of the will. It appears that the petitioner herein had the usual notice of probate and the objection which he now raises as to the jurisdiction of the court in Steuben County could have been raised on the probate more than three years ago. In addition, the petitioner has not been diligent in bringing this application to a conclusion. It commenced this proceeding in December of 1956 and never finally brought it to trial until December of 1957. Without passing on the question of domicile or residence, it is held that petitioner is guilty of laches, lack of diligence and lack of good faith. The sole reason for this application seems *1015 to be the avoidance of bringing the discovery proceeding to trial on the question of title and to get this estate into a more convenient forum for petitioner.
It is, therefore, not necessary to pass on such question of residence or domicile.
In the court’s discretion, the application is denied and the petition is dismissed, with $150 costs to the executor against applicant.
Decree accordingly.